IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| NATIONWIDE PROPERTY and CASUALTY COMPANY, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | CASE NO.:  1:11-cv-02591-JEO |
| PHILLIP HUNT and COMMUNITY, ) & SOUTHERN BANK, INC. f/k/a ) FIRST NATIONAL BANK OF ) GEORGIA, ) ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

In this declaratory judgment action, Plaintiff Nationwide Property and Casualty Company ("Nationwide") seeks a declaratory judgment that a homeowners insurance policy it issued to Defendant Phillip Hunt ("Hunt") is void and provides no coverage for a fire loss suffered by Hunt.  Hunt, in turn, has filed a counterclaim against Nationwide for breach of the insurance policy.

Before the court is Nationwide's motion for summary judgment on both its request for declaratory relief and Hunt's counterclaim.  (Doc. 19).[1]  The motion has been fully briefed and is properly under submission before the court.[2]  (Docs. 19, 20, 25, 26).  For the reasons stated below, the court finds that the motion is due to be denied.

---

[1] Citations to "Doc(s). __" are to the document numbers assigned by the clerk to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet.

[2] The parties have consented to the exercise of plenary jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 23).

I.      **Factual Background**[3] **and Procedural History**

In 2001, Hunt purchased a homeowners insurance policy from Nationwide (the "Policy"). (Doc. 20-1 at 3). The Policy insured the residence located at 783 County Road 50 in Fruithurst, Alabama (the "Property"), and provided coverage for the dwelling, detached structures, and personal property. (Doc. 19-10 at 3). As part of the Policy application process, Hunt confirmed that he was the owner of the Property and that it was owner occupied. (Doc. 19-10 at 3). On July 31, 2001, Hunt transferred title to the Property to his daughter via a warranty deed. (Doc. 19-4 at 2). He did not notify Nationwide of the transfer of title. (Doc. 20-1 at 2). Hunt continued to live in the residence and continued to pay the insurance premiums and taxes on the Property. (Doc. 20-1 at 2-3).

In May 2007, Hunt obtained a $170,000.00 loan from First National Bank of Georgia ("First National") to make improvements to the Property. (Doc. 20-1 at 3). As security for the loan, Hunt's daughter granted First National a mortgage on the Property. (Doc. 19-5 at 2-6).

On October 1, 2009, Hunt filed a Chapter 13 Voluntary Petition in the United States Bankruptcy Court for the Northern District of Alabama, Case No. 1:09-bk-42917. Hunt represented in the bankruptcy petition that he held no interest in real property and that he leased the Property. (Doc. 19-2 at 19, 31).

On October 24, 2010, the Property and its contents were destroyed by fire. (Doc. 20-1 at 3). Hunt gave notice of the loss to Nationwide that same day. (*Id.*) Ten days later, on November 3, 2010, the bankruptcy trustee filed a motion to dismiss Hunt's bankruptcy case for failure to

---

[3]The facts stated in this background are for summary judgment purposes only. They may not be the actual facts.

make the required payments under the bankruptcy plan. (Doc. 19-8). The bankruptcy court dismissed the case on December 8, 2010. (Doc. 19-9). Hunt never amended his bankruptcy petition to include a potential claim against Nationwide as an asset of his estate.

Hunt submitted a Proof of Loss to Nationwide on May 14, 2011. (Doc. 19-3). Nationwide initiated this action two months later, seeking a declaration that it owed no coverage to Hunt for the fire loss.[4] (Doc. 1). Hunt answered the complaint and asserted a counterclaim against Nationwide, alleging that Nationwide had breached the Policy by failing to reimburse him for the fire loss. (Doc. 6). Nationwide has now moved for summary judgment in its favor, arguing that Hunt's counterclaim is barred by judicial estoppel and that the Policy is void.

## II.     Summary Judgment Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue (dispute) of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence that a genuine issue (dispute) of material fact does exist. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). In ruling on a motion for summary judgment, the court must draw all reasonable inferences in the light most favorable to the non-moving party. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1330 n.2 (11th Cir. 2013); *Hill v. Wal-Mart*, 510 F. App'x 810, 813 (11th Cir. 2013). The court may consider materials including depositions, documents, electronically stored

---

[4] Nationwide also sued Community & Southern Bank, Inc. f/k/a First National Bank of Georgia, seeking a declaration of its responsibilities (if any) to the bank. (Doc. 1). Following a settlement, the bank was dismissed from this action. (Doc. 18).

information, affidavits, and declarations.  FED. R. CIV. P. 56(c)(1)(A).

### III.     Discussion

#### A.     Is Hunt's counterclaim barred by judicial estoppel?

The doctrine of judicial estoppel operates " 'to protect the integrity of the judicial process' by 'prohibiting parties from deliberately changing positions according to the exigencies of the moment.' "  *New Hampshire v. Maine*, 532 U.S. 742 , 749-50 (2001) (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F. 2d 595, 598 (6th Cir. 1982), and *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)); *see also Middleton v. Caterpillar Indus., Inc.*, 979 So. 2d 53, 59 (Ala. 2007) (quoting *New Hampshire*).  Here, Nationwide asserts that Hunt's counterclaim is barred by judicial estoppel because he never identified a fire loss claim against Nationwide in his bankruptcy filings. Nationwide argues that Hunt's fire loss claim was an asset of his bankruptcy estate and that his failure to disclose the claim to the bankruptcy court is "inconsistent" with the assertion of his counterclaim here.  (*See* Doc. 19 at 12-13).

Because this is a diversity case, "the application of the doctrine of judicial estoppel is governed by [Alabama] state law."  *Original Appalachian Artworks, Inc. v. S. Diamond Assoc., Inc.*, 44 F.3d 925, 930 (11th Cir. 1995); *see also Carribean I Owners' Assoc., Inc. v. Great Amer. Ins. Co. of New York*, 619 F. Supp. 2d 1178, 1183 (S.D. Ala. 2008) ("Because federal subject matter jurisdiction in this case is predicated solely on diversity jurisdiction, the Court looks to Alabama's law of judicial estoppel."); *Sunbelt Cranes Const. and Hauling, Inc. v. Gulf Coast Erectors, Inc.*, 189 F. Supp. 2d 1341, 1345 (M.D. Fla. 2002); *Lane v. Wal-Mart, Inc.*, 172 F.3d 879 (10th Cir. 1999).  The Supreme Court of Alabama has embraced the factors set forth in *New Hampshire* for determining whether judicial estoppel applies:

> [F]or judicial estoppel to apply (1) "a party's later position must be 'clearly inconsistent' with its earlier position"; (2) the party must have been successful in the prior proceeding so that "judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or second court was misled'" (quoting *Edwards v. Aetna life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982)); and (3) the party seeking to assert an inconsistent position must "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

*Ex Parte First Alabama Bank*, 883 So. 2d 1236, 1244-45 (Ala. 2003) (quoting *New Hampshire*, 532 U.S. at 750-51).[5]

Here, at least two of the three judicial estoppel factors are absent. First, Hunt was not "successful" in his bankruptcy case. The court recognizes that, as a general rule, "[t]he doctrine of judicial estoppel applies, where a debtor in bankruptcy proceedings fails to disclose any claim that may be presented in a nonbankruptcy contest, to estop the debtor from presenting the claim." *Luna v. Dominion Bank of Middle Tennessee, Inc.*, 631 So. 2d 917, 919 (Ala. 1993). Here, however, Hunt's fire loss claim arose on October 24, 2010, more than a year after he filed his bankruptcy petition and just ten days before the bankruptcy trustee moved to dismiss his

---

[5] The undersigned recognizes that the district courts in this circuit have not consistently followed the rule set forth in *Original Appalachian* and have sometimes analyzed judicial estoppel under federal law in diversity cases. *See, e.g., Ballenger v. Sikorsky Aircraft Corp.*, 2011 WL 5245209, *3 (M.D. Ala. 2011) (citing federal law and declining to invoke judicial estoppel); *State Farm Fire & Casualty Co. v. Billingsley*, 2010 WL 1511560, *8 (S.D. Ala. 2010) (citing federal law and finding that judicial estoppel did not apply). For the most part, these cases do not address whether federal or state law should be applied, but simply cite federal law. In any event, none of these cases constitute binding precedent on this court, which will follow *Original Appalachian*. *See Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co., Ltd.*, 240 F.3d 956, 965 (11th Cir. 2001) ("while the decisions of fellow judges are persuasive, they are not binding authority"). Furthermore, because Alabama has adopted the factors set forth in *New Hampshire*, the outcome in this case would be the same even if judicial estoppel were analyzed under federal law. *See Caribbean I*, 619 F. Supp. 2d at 1183-84 (applying Alabama law but noting that "the outcome in this case would be identical irrespective of whether federal or Alabama law of judicial estoppel applied"); *see also American Casualty Co. of Reading, Pennsylvania v. Skilstaf, Inc.*, 695 F. Supp. 2d 1256, 1261 (M.D. Ala. 2010) (finding that judicial estoppel was inappropriate and citing both *New Hampshire* and Alabama state law). Indeed, both parties have acknowledged that the outcome should be the same regardless of whether state or federal law is applied here. (*See* Doc. 25 at 6; Doc. 26 at 1).

bankruptcy case for failure to make his payments under his Chapter 13 plan. Hunt testified in his affidavit in opposition to Nationwide's motion for summary judgment that "[a]fter the motion to dismiss [the bankruptcy case] was filed I knew the case was being dismissed so I did not ask my attorney to amend the petition adding the potential claim against Nationwide." (Doc. 20-1 at 4). The trustee's motion to dismiss was granted and the bankruptcy case was dismissed on December 8, 2010, without a discharge of Hunt's debts. In other words, notwithstanding Hunt's failure to disclose his fire loss claim, he was not "successful" in the bankruptcy because he never received a discharge of his debts. *See Martin v. Cash Express, Inc.*, 60 So. 2d 236, 248 (Ala. 2010) (holding that the plaintiffs were judicially estopped from pursuing a claim they had not included in their Chapter 13 bankruptcy petition and noting that the plaintiffs had been "successful in having the plan confirmed and their debts discharged"); *Hamm v. Norfolk Southern Railway Co.*, 52 So. 2d 484, 494 (Ala. 2010) (holding that the plaintiff's claim was barred by judicial estoppel where he had failed to identify the claim as a potential asset in his bankruptcy proceeding and had been "successful" in receiving a no-assets discharge in the bankruptcy); *Luna*, 631 So. 2d at 918 (applying judicial estoppel to bar the plaintiff's claim where he had been discharged from his debts in a bankruptcy proceeding without disclosing the claim as a potential asset).

Second, because Hunt's debts were not discharged in bankruptcy, he derived no unfair advantage over Nationwide or any of his creditors by not disclosing his fire loss claim. Indeed, if the court were to apply judicial estoppel to bar Hunt's counterclaim under these circumstances, Nationwide would be "the undeserving recipient of an unwarranted windfall, *i.e.*, the dismissal of [Hunt's] potentially meritorious claim." *Middleton*, 979 So. 2d at 64. "Such a result would

thwart the goals of our justice system." *Id.*

For these reasons, the court finds that the doctrine of judicial estoppel is not applicable here and that Hunt's counterclaim against Nationwide is not barred by judicial estoppel.

### B. Does the Policy cover Hunt's fire loss claim?

Nationwide also argues that the Policy is void and provides no coverage for the fire loss on the Property. Nationwide argues that the Policy is void because (1) Hunt misrepresented his ownership of the Property, which triggered the "Concealment or Fraud" provision of the Policy, and (2) Hunt lost any insurable interest in the Property when he transferred title to his daughter. (Doc. 19 at 15-16). The court will address each argument in turn.

#### 1. Misrepresentation/Concealment regarding Hunt's ownership of the Property

The Policy contains a "Concealment or Fraud" provision that voids the policy under certain circumstances. The "Concealment or Fraud " provision provides:

> 2. **CONCEALMENT OR FRAUD**
>
> a) This policy is void as to all **insureds** if **you** or any other **insured** has intentionally misrepresented any material fact or circumstance which would have caused **us** not to issue or renew this policy.
>
> b) This policy does not provide coverage for all **insureds** if **you** or any other **insured**, either before or after a loss, has:
>
> > (1) intentionally concealed or misrepresented any material fact or circumstance; or
> >
> > (2) committed any fraud or made false statements relating to such loss.

(Doc. 19-1 at 44). Nationwide argues that the provision applies here and that the Policy is void

because Hunt "intentionally misrepresented a fact, his ownership of the house, which would have caused Nationwide to not renew the Policy had it known the truth."  (Doc. 19 at 15). Nationwide, however, has offered no evidence that Hunt ever made such a misrepresentation, much less that he did so intentionally.

In support of its motion for summary judgment, Nationwide submitted the affidavit of Kirsten Clayvon, a Nationwide Personal Lines Senior Underwriter.  (Doc. 19-10).  In her affidavit, Clayvon states that "[d]uring the policy application process, the insured is asked to confirm that the insured residence is owner occupied" and that "Mr. Hunt made such a confirmation at the time of his policy purchase in 2001."  (Doc. 19-10 at 3).  The evidence is undisputed that Hunt did, in fact, own (and reside at) the Property at that time.  Significantly, Clayvon does not state in her affidavit that Hunt ever confirmed his ownership of the Property at any time other than when he first purchased the Policy or that Hunt was ever asked to do so again.  Consistent with Clayvon's affidavit, Hunt does not recall "anyone from Nationwide asking for any updates regarding the occupancy or ownership of the house" even though the Policy was renewed several times.  (Doc. 20-1 at 3).  In sum, there is no evidence in the record that Hunt made any misrepresentation to Nationwide regarding his ownership of the Property.[6]

Although Nationwide has framed its fraud argument in terms of misrepresentation, it appears to the court that the issue is better framed in terms of concealment.  Did Hunt's failure to notify Nationwide that he no longer owned the Property constitute an intentional concealment of material fact so as to trigger the "Concealment or Fraud" provision of the Policy?

---

[6]Because there is no evidence that Hunt ever misrepresented his ownership of the Property, the court need not address whether such a misrepresentation would have been "material."

In Alabama, the elements of fraud based on the suppression or concealment of material facts are: "(1) a duty on the part of the defendant to disclose facts; (2) concealment or non-disclosure of material facts by the defendant; (3) defendant's knowledge of the facts and their materiality; (4) action by the plaintiff in reliance on the suppression; and (5) damages resulting from the reliance action." *Sherrin v. Northwestern National Life Ins. Co.*, 2 F.3d 373, 378 (11th Cir. 1993) (citing *Wolff v. Allstate Life Ins. Co.*, 985 F.2d 1524 (11th Cir. 1993) (citing *Hardy v. Blue Cross and Blue Shield of Ala.*, 585 So. 2d 29, 32 (Ala. 1991)).  Here, Nationwide has not presented any documentation or other evidence suggesting that Hunt was under a duty to disclose that he had transferred ownership of the Property to his daughter.  Although Nationwide contends that ownership of the Property was "a required condition for eligibility for the homeowners policy" (doc. 19 at 15), that alleged condition is not stated anywhere in the Policy. In this regard, the court would note that Hunt was the named "insured" under the Policy.  (*See* Doc. 19-10 at 10).  The Policy defines the term "insured" to mean "you," which in turn is defined to mean "the named insured shown in this policy who resides at the residence premises." (*Id.* at 14).  Hunt satisfied this definition, which defines insured status based on residency at the premises, not ownership.

Moreover, even assuming that Hunt was under a duty to disclose that he no longer owned the Property, there is, at a minimum, a genuine dispute as to whether that fact was material and whether Hunt was aware of its materiality.  Again, there is no provision in the Policy requiring the insured (Hunt) to own the Property in order to remain insured, and no evidence that Nationwide ever asked Hunt to confirm his ownership of the Property once the Policy was issued. A trier of fact could certainly find that Hunt was not on notice of the alleged materiality

9

of his transfer of title to the Property to his daughter.

There also is a genuine dispute as to whether Nationwide suffered any damage as a result of its alleged reliance on Hunt's ownership of the Property.  According to Kirsten Clayvon, if Nationwide had been advised of the change in ownership of the Property, "immediate action would have been taken to move this property to the correct policy form." (Doc. 19-10 at 5). Regardless of whether the Property had been moved to "the correct policy form" or not, Nationwide would have been faced with a fire loss claim when the Property was destroyed by fire. The end result for Nationwide would not have changed.

Finally, the "Concealment or Fraud" provision of the Policy requires that any concealment of material fact be "intentional" in order for coverage to be voided.  Nationwide has offered no evidence that Hunt "intentionally" failed to disclose that he had transferred ownership of the Property, and Hunt has affirmatively stated that he "never intended to mislead Nationwide regarding the legal title." (Doc. 20-1 at 3).

For all of these reasons, Nationwide has failed to meet its burden of showing the absence of a genuine issue of material fact with respect to the application of the "Concealment or Fraud" provision of the Policy.

### 2.     Lack of Insurable Interest in the Property

Without offering any legal or other support, Nationwide asserts that the Policy is void because Hunt lost any insurable interest in the Property when he transferred ownership to his daughter. (Doc. 19 at 16).  Alabama law supports a contrary finding.

In Alabama, "[n]o contract of insurance of property or of any interest in property ... shall be enforceable as to the insurance except for the benefit of persons having an insurable interest as

at the time of the loss." ALA. CODE § 27-14-4.  An insurable interest is defined as "any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment." *Id.*  As a result, " 'a fee title is clearly not required of the insured, nor even a direct property interest, the test of exposure to financial loss being all important. ... And a person who had made himself responsible for property may insure it against loss.' " *Hunter v. State Farm Fire & Cas. Co.*, 543 So. 2d 679, 681 (Ala. 1989) (quoting 4 Appleman, *Insurance Law and Practice* § 2123 (1969)).

Here, although Hunt transferred title to the Property to his daughter, he continued to reside at the Property, performed all of the maintenance on the Property, and paid all of the insurance premiums and taxes on the Property.  (Doc. 20-1 at 3).  He also took out a $170,000.00 loan to make improvements to the Property and was solely responsible for repaying the loan. (*Id.*)  When the Property and its contents were destroyed in the fire, Hunt lost "almost all of [his] belongings." (*Id.*)  Under these circumstances, the evidence is sufficient to establish that Hunt had a "substantial economic interest in the safety [and] preservation" of the Property and that he did not lose an insurable interest in the Property when he transferred ownership to his daughter.[7]

## IV.   CONCLUSION

Based on the foregoing, Nationwide's motion for summary judgment (doc. 19) is due to be **DENIED**.  An appropriate order will be entered.

---

[7] In its motion for summary judgment, Nationwide has also expressed a desire to cancel the Policy based on the Policy's "Cancellation During Policy Period" provision, which provides in part that Nationwide may cancel the Policy if "the property or other interest has been transferred to another person, unless the transfer is permissible under the terms of this policy." (Doc. 19 at 8-9, 15-16). Because the court has determined that summary judgment is due to be denied, the court will not address Nationwide's desire to cancel the Policy at this time and will defer consideration of that issue until trial.

**DONE** this 13th day of June, 2014.

                                                  */s/ John E. Ott*
                                        **JOHN E. OTT**
                                        Chief United States Magistrate Judge